**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

|  |  |  |
|---|---|---|
| **HATTIE C. STOKES,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) | CIVIL NO. 3:09cv158 |
| **MICHAEL J. ASTRUE,** **Commissioner of Social Security,** | ) ) ) ) | |
| **Defendant.** | ) ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Hattie C. Stokes, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for Social Security Disability ("DIB") and Supplemental Security Income payments ("SSI"). The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 8) and motion to remand (docket no. 9) be DENIED; that

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

Defendant's motion for summary judgment (docket no. 11) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI and DIB on October 26, 2006, claiming disability due to asthma, a right ankle fracture, osteoarthritis in her knees and hands, reflux, and chest pain, with an alleged onset date of May 24, 2006. (R. at 32, 100.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 49-54, 61-65.) On April 2, 2008, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 25-41.) On May 23, 2008, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act because based on her age, education, work experience and residual functional capacity, there are jobs she could perform which exist in significant numbers in the national economy. (R. at 8-24.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-4.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process

that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[4] based on an assessment of the claimant's residual functional capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform her past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a VE. When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

### IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of her disability. (R. at 13.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of residuals of the fracture of her right ankle, asthma/rhinitis, and arthritis in her right knee, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 13-18.) The ALJ next determined that Plaintiff had the RFC to perform light work, except that she could only occasionally perform postural activities such as climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, and that she could never climb ladders, ropes, or scaffolds. (R. at 18-22.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform her past relevant work as a school cafeteria worker/cook, school bus driver, school bus aid, cleaner/school custodian, or deputy sheriff because of the levels of exertion required in each position. (R. at 22-23.) At step five, after considering Plaintiff's age, education, work experience and RFC, and after consulting a VE, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform. (R. at 23-24.) Specifically, the ALJ found that Plaintiff could work as a laundry folder/sorter, factory helper, and cafeteria attendant. (R. at 23-24.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that she was not entitled to

benefits. (R. at 30-31.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the alternative, she seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of her position, Plaintiff argues that the ALJ (1) improperly evaluated the opinions of Plaintiff's treating physicians and the State Agency non-examining physicians, and (2) erred in evaluating Plaintiff's credibility. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 9-15.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 10-21.)

**1.     Plaintiff contends that the ALJ failed to properly consider the opinions of Plaintiff's treating physicians and the State Agency non-examining physicians.**

Plaintiff contends that the ALJ failed to apply the proper standard in evaluating the opinions of her treating physicians, Dr. Pedram (Plaintiff's pulmonologist) and Dr. Corbett (Plaintiff's primary care physician), as well as the opinions of two State Agency non-examining physicians. (Pl.'s Mem. at 9-12.) During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. See 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the plaintiff's treating physicians, consultive examiners or other sources that are consistent with each other, then the ALJ makes a determination based

on that evidence. See 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d). Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005); see 20 C.F.R. § 404.1527(d)(3)-(4), (e).

**A.      The Opinions of the Treating Physicians**

Plaintiff argues that the ALJ incorrectly rejected her treating physicians' opinions on Plaintiff's physical limitations as being opinions on an issue reserved to the Commissioner. (Pl.'s Mem. at 9-10.) According to Plaintiff, these opinions were "medical determination[s]" and not "legal opinion[s] that she is 'disabled.'" (Pl.'s Mem. at 9-10.) Drs. Pedram and Corbett opined on Plaintiff's RFC, including the amount of weight Plaintiff could lift and the number of hours she could sit, stand, and walk. (R. at 293-300, 362-69.) As noted above, the regulations do not require that the ALJ accept an opinion from a treating physician when the physician opines on an issue reserved for the Commissioner. 20 C.F.R. § 404.1527(d)(3)-(4), (e).

Specifically as to opinions on a plaintiff's RFC, the regulations provide that the ALJ shall use treating physicians' opinions on the nature and severity of an impairment, including a plaintiff's RFC, or whether an impairment meets or equals the requirements of a listing, but "the final responsibility for deciding these issues is reserved to the Commissioner," and the ALJ "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. § 404.1527(e)(2), (3). To the extent that Drs. Pedram and Corbett opined on Plaintiff's RFC, the ALJ was not obligated to give their opinions controlling weight; rather, he was only required to consider them.

      A review of the record shows that the ALJ complied with the regulations in weighing Dr. Pedram's opinions, which were summarized by Dr. Pedram on a Pulmonary Impairment Questionnaire. The ALJ considered those opinions offered by Dr. Pedram, and complied with the regulations by specifically articulating the weight given to those opinions and the reasons for the weight assigned. (R. at 22.) Although, as the ALJ noted, Dr. Pedram was a specialist and a treating source who had treated Plaintiff on several occasions, the ALJ found that Dr. Pedram's opinions were inconsistent with the records of his own treatment. (R. at 21-22, 294-300.) The ALJ supported this finding with specific references to Dr. Pedram's treating notes, which reflected that Plaintiff responded to her medication when she took it and that her pulmonary condition was, on more than one occasion, observed to be normal or unremarkable. (R. at 21-22, 238, 256-57, 267, 311-13, 318, 329.)

      The ALJ also complied with the regulations in evaluating the opinions of Dr. Corbett, provided in January 2007 and April 2008. In addition to noting that Dr. Corbett had also opined on an issue reserved for the Commissioner, as had Dr. Pedram, the ALJ observed that Dr.

Corbett was not a specialist, and that his opinions were conclusory, unsupported by the preponderance of the objective medical evidence and Plaintiff's daily activities, and based upon little more than Plaintiff's subjective self-reporting. (R. at 22, 191-219, 360-69.) Indeed, as to Dr. Corbett's January 2007 opinion that Plaintiff had been disabled since August 18, 2006, it consisted of a single conclusory sentence, written on a page torn from a prescription pad, and it lacked any reference to supporting laboratory studies or clinical examinations. (R. at 199.) Moreover, his opinions articulated in a April 2008 Lower Extremities Questionnaire were contrary to the objective medical evidence of record inasmuch as the evidence demonstrated that Plaintiff ambulated well with a steady gait, walked with no toe drag or foot drop, had no atrophy in her lower right leg, had a supple ankle with a good range of motion, and had only mild osteoarthritis in her knee. (R. at 171, 175, 189, 192, 233, 244, 276, 314, 318.)

**B.     The Opinions of the State Agency Physicians**

Plaintiff further argues that the ALJ improperly credited the opinions of the State Agency non-examining physicians. (Pl.'s Mem. at 11-12.) More precisely, Plaintiff asserts that the Agency physicians' opinions are unreliable and not grounded in the medical evidence of record inasmuch as those physicians did not review all of Plaintiff's treating physicians' records or Plaintiff's subjective complaints in rendering their opinions. (Pl.'s Mem. at 11-12.)

DDS requested medical opinions on initial consideration and again on reconsideration. (R. at 220-27, 250-51.) The first opinion was given by a Dr. Wickham in January 2007. (R. at 220-27.) Dr. Wickham reviewed the evidence available at that time and concluded that Plaintiff had the RFC to perform light work. (R. at 226.) Upon reconsideration, DDS requested review by a Dr. Martin, who reviewed all the evidence in the file as of April 2007 (when the request for

review was made) and affirmed Dr. Wickham's May 2007 assessment. (R. at 251.) The ALJ adopted the opinions of the DDS physicians because they were well-supported by medically acceptable clinical and laboratory diagnostic techniques. (R. at 21.)

As Plaintiff asserts, the DDS physicians were unable to review and consider all of the medical evidence in the record because some of that evidence was not available at the time the DDS physicians rendered their opinions. Based upon these circumstances, Plaintiff argues that the DDS physicians' opinions should not have been relied upon. (Pl.'s Mem. at 12.) However, Plaintiff does not explain how, even if the DDS physicians would have had access to Plaintiff's later medical records, those records might have altered their opinions. As the ALJ notes in his opinion, the evidence received after the reconsideration determination and made a part of the record did not provide any new or material information that would alter the findings regarding Plaintiff's RFC determination. (R. at 21.)

Moreover, if the Court were to accept Plaintiff's argument, a non-examining source's opinion would have to be continuously updated every time a claimant provides new evidence. If so, a claimant could always add additional evidence to the record and then offer the argument that an ALJ did not assign appropriate weight to the non-examining source who, of course, did not have the opportunity to review the new evidence. Even with additional medical evidence being added to a record after such opinions are offered, the ALJ is nevertheless obliged to factor all of the evidence into his decisional process when he is analyzing a State Agency non-examining source opinion. The ALJ's evaluation of the opinions of Drs. Pedram and Corbett, which are among the evidence added to the record after the DDS determinations, demonstrates that the ALJ did not rely solely on the DDS determinations without regard to evidence admitted

to the record after those opinions were given; rather, he also considered the additional evidence in reaching the RFC determination.

Based upon the foregoing, the Court recommends a finding that the ALJ properly evaluated the opinions of the DDS physicians, as well as the opinions of Plaintiff's treating physicians, and assigned them appropriate weight.

**2.      Plaintiff argues that the ALJ erred in discounting Plaintiff's credibility.**

Plaintiff asserts that the ALJ failed to properly evaluate Plaintiff's credibility and that his credibility determination is not supported by substantial record evidence. After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(5)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. Craig v. Charter, 76 F.3d 585, 594 (4th Cir. 1996); see also SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. Id.; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. Craig, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence

of the pain and the extent to which it affects the individual's ability to work. Craig, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. Craig, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Court of Appeals for the Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. See Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591.

At the hearing before the ALJ, in support of her subjective complaints of pain and limitations as a result of her impairments, Plaintiff testified that she experiences numbness in her

13

left hand, and that sometimes her right hand and right knee feel like they are about to "give out." (R. at 33-34.) She described her ankle pain as feeling like she was being stuck with "pins and needles." (R. at 34.) For this pain, she reported that she takes Ibuprofen twice a day, and that it helps "some." (R. at 34.) As a result of her ankle impairment, she feels able to stand for only five minutes and walk approximately ten feet before she must sit. (R. at 35.) Plaintiff further testified that she experiences asthmatic spells every day, including when she is active, and sometimes upon waking. (R. at 36-37.) When asked about her daily activities, Plaintiff testified that she requires assistance in the shower so that she does not fall; she has food prepared for her; and she lays in bed all day listening to gospel music. (R. at 39.) She also testified that she leaves the house only once per week to shop, and then only for a brief period of time. (R. at 40.) She further asserted that sometimes she spends only a minute in the store before departing. (R. at 40.)

It is clear from the ALJ's opinion that he performed a thorough analysis of both the subjective and objective medical evidence presented to him in making his determinations as to Plaintiff's credibility and her RFC. The ALJ performed the required <u>Craig</u> analysis and provided an explicit rationale to support his conclusions, stating at least six reasons for discrediting Plaintiff's testimony about her pain and limiting conditions. (R. at 18-21.) The ALJ found that the Plaintiff had the severe impairments of residuals from a fracture of her right ankle, asthma/rhinitis, and arthritis in her right knee, but that these impairments, either individually or in combination, did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13-18.) The ALJ then found that those "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements

concerning the intensity, persistence and limiting effects of these symptoms are not credible." (R. at 20.)

Specifically, the ALJ concluded that Plaintiff's medical records and her description of her daily activities were inconsistent with the amount of pain Plaintiff allegedly experienced. (R. at 20-21.)  In support of this credibility determination, the ALJ noted there was no medical evidence in the record that demonstrated that the ankle fracture sustained by Plaintiff in 2003 caused any current limitations in her being able to stand or walk, at least to the degree that work at a light capacity would be precluded, where the records demonstrated that Plaintiff received successful treatment for the fracture and that her pain was adequately addressed by medication. (R. at 20, 171, 189, 192, 276, 314.)  The ALJ further noted that Plaintiff failed to abide by the treatment recommendations of her physicians, including diet and exercise for weight loss; failed to follow-up with Dr. Shah, a podiatrist, for evaluation and necessary adjustments of her prescribed ankle brace; and used her prescribed respiratory medications only sporadically, although her respiratory impairments appeared to be controlled when she used the medications consistently. (R. at 20-21, 171-74, 193, 198, 260.)  The ALJ also observed that, on multiple occasions, Plaintiff had informed her doctors that she was unable to work and requested a doctor's excuse, but that her doctors had concluded that she was able to work. (R. at 20-21, 172-74, 192, 207, 277.)  Plaintiff's medical records also reflect that Plaintiff was argumentative and uncooperative with her physical therapist and Dr. Adelaar during her appointments for treatment. (R. at 20-21, 189, 192-92.)  In fact, her physical therapist noted that he suspected that she was putting forth a "managed effort," and that "secondary gain factors may be part of her lack of progress." (R. at 192.)  The ALJ further noted that Plaintiff's bilateral hand x-rays revealed

only minimal bilateral degenerative changes and that Plaintiff was diagnosed with only mild osteoarthritis of the right ankle and knee. (R. at 21, 175, 235, 314.) Finally, the ALJ observed that Plaintiff's ability to shop, perform some household chores, visit, and drive, demonstrated that although Plaintiff may have experienced some pain, the pain was not totally debilitating. (R. at 21, 39-40.)

Plaintiff specifically argues that the ALJ erred in evaluating Plaintiff's credibility because the record documents that Plaintiff had limited motion and pain in her ankle. (Pl.'s Mem. at 14.) In presenting the argument, Plaintiff appears to have misread the ALJ's findings. The ALJ did not completely discredit Plaintiff's allegations of pain; rather, he found that, although she had some pain, her pain was not totally debilitating such that she could perform light work with additional limitations. (R. at 18-22.) Plaintiff further argues that "[t]he indication that Plaintiff may have been uncooperative at a single examination is hardly decisive in a credibility determination." (Pl.'s Mem. at 14.) However, the ALJ did not base his decision solely on Plaintiff's unwillingness to cooperate with her physical therapist and Dr. Adelaar, which occurred on two occasions; rather, he considered her unwillingness to cooperate during those appointments as one of several factors contributing to his credibility determination. (R. at 20-21, 187-89, 276.)

Finally, Plaintiff argues that "the ALJ's finding that [Plaintiff] could perform household chores and shopping is a significant gloss on her testimony that in an average day, her daughter or mother would help her take a shower and cook her some food before she lied down in bed all day, and that she occasionally drove to the store for 'about a minute.'" (Pl.'s Mem. at 14.) Although Plaintiff testified at the hearing that she requires assistance in the shower, does not

16

prepare her own food, and lays in bed all day, she admitted at the hearing that she is able to leave the house once per week to shop. (R. at 39-40.) Additionally, the record shows that in November 2006, Plaintiff indicated that she could prepare her own food daily, iron her clothing, go grocery shopping once a week, go outside daily, visit with friends, go to church, and lift ten to twenty pounds. (R. at 130-137.) The ALJ resolved such evidence of Plaintiff's daily activities, finding that she could shop, perform some household chores, visit, and drive. (R. at 21.) Based upon such evidence, the ALJ credited Plaintiff's allegations of pain, but found that she was not totally debilitated, as she had alleged. (R. at 21.) As noted earlier, the Court must give great deference to the ALJ's credibility determinations and factual findings unless they are unreasonable, contradict other findings of fact, or are based on an inadequate reason or no reason at all. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997).

It is clear that the evidence in the record supports the ALJ's determination that Plaintiff's testimony regarding the extent and limiting effects of her pain was less than credible. Accordingly, the Court recommends a finding that the ALJ's conclusions regarding Plaintiff's credibility and RFC determinations are based on substantial evidence in the record and application of the correct legal standard, and should not, therefore, be overturned.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 8) and motion to remand (docket no. 9) be DENIED; that Defendant's motion for summary judgment (docket no. 11) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Richard

L. Williams and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within ten (10) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                  /s/
                                  DENNIS W. DOHNAL
                                  UNITED STATES MAGISTRATE JUDGE

Date: November 30, 2009
Richmond, Virginia