IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

|  |  |  |
|---|---|---|
| HATTIE C. STOKES, | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL NO. 3:09cv158 |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter is before the Court to consider Plaintiff's objections to the Report and Recommendation ("R&R") entered by the Honorable Dennis W. Dohnal, United States Magistrate Judge, on November 30, 2009, pursuant to 28 U.S.C. § 636(b)(1)(B), affirming the decision of the Administrative Law Judge ("ALJ") that the Plaintiff is not disabled. When a party files objections to a magistrate judge's R&R, the Court considers de novo those portions of the R&R to which an objection has been made. 28 U.S.C. § 636(b)(1)(C).

Having considered the R&R, the entire record, and the objections and arguments of counsel, the objections to the R&R will be overruled; the R&R will be accepted and adopted; the Plaintiff's Motion for Summary Judgment and Motion to Remand will be denied; the Defendant's Motion for Summary Judgment will be granted; and the decision of the Commissioner will be affirmed.

# PLAINTIFF'S OBJECTIONS

**A.     Plaintiff objects to the ALJ's application of the treating physician rule.**

    **1.     Dr. Pedram**

The Plaintiff first objects to the magistrate judge's statement that Dr. Pedram's treatment notes showed that "Plaintiff responded to her medication when she took it and that her pulmonary condition was, on more than one occasion, observed to be normal or unremarkable." (Pl.'s Obj. at 1-2.)  Specifically, Plaintiff contends that the pages of the transcript that were cited by the magistrate judge in support of this statement are not findings by Dr. Pedram and do not indicate that Plaintiff's condition was normal or unremarkable.  (Id.)

The Court has reviewed each of the records cited by the magistrate judge, and has found that, although some of those records were not created by Dr. Pedram, all of them support the ALJ's conclusion that Plaintiff responded to her medication when she took it, that her pulmonary condition was generally unremarkable, and that her real problem was allergic rhinitis rather than asthma. (R. at 21-22.)   Specifically, Dr. Pedram's treatment notes indicate that Plaintiff's lungs were clear bilaterally; she had normal respiratory effort, chest expansion, symmetry, lung percussion, and auscultation; she had a class III airway; she was really suffering from allergic rhinitis (allergies); and she had been out of her prescribed medication for two months.  (R. at 311-13.)  The other records cited by the magistrate judge, and relied upon by the ALJ, reflect that:

> [Plaintiff's] Lungs are clear except for a 2 mm nodule in the superior segment of the left lower lobe . . . of doubtful significance.  No pleural fluid.  No hilar or mediastinal adenopathy is noted.  Heart and great vessels including the pulmonary arteries are unremarkable.  There is hypertrophy of the adrenal glands.  No bone lesions.

(R. at 256-57.) The other records further note that Plaintiff had unlabored respirations; mild airflow obstruction that improved after she inhaled bronchodilators; normal inspiratory muscle pressures; reduced expiratory muscle pressures; and normal diffusing capacity. (R. at 318, 329.) Inasmuch as the ALJ's assessment of Dr. Pedram's opinion is supported by substantial evidence, Plaintiff's objection is overruled.

  2. **Dr. Corbett**

Plaintiff also objects to the magistrate judge's conclusion that Dr. Corbett's opinions were contrary to the objective medical evidence of record inasmuch as the evidence demonstrated that Plaintiff ambulated well with a steady gate, walked with no toe drag or foot drop, had no atrophy in her lower right leg, had a supple ankle with a good range of motion, and had only mild osteoarthritis in her knee. (Pl.'s Obj. at 2-3.) Plaintiff again contends that the magistrate judge relied on pages in the record that do not support his conclusion. (Id.)

Having reviewed each of the records cited by the magistrate judge, the Court finds Plaintiff's representation of the contents of those pages to be disingenuous. For example, Plaintiff contends that page 175 "only notes no gross fracture of the ankle." (Id. at 2.) The radiology note at page 175 of the record indicates more than that. It states: "The bony structures are aligned anatomically with no fracture or dislocation. There is mild tricompartmental osteoarthritis with no joint effusion or intraarticular loose bodies. Impression: No fracture or dislocation." (R. at 175.) Plaintiff further contends that the medical record at page 189 "notes no range of motion was available." (Pl.'s Obj. at 2.) Plaintiff fails to also note that the reason no range of motion was available is because Plaintiff apparently refused to move her ankle, was argumentative, and was angry about her treatment from the surgeon. (R. at 189.) Plaintiff also

3

fails to note that this treatment note further states that Plaintiff "ambulates well" and had "no atrophy or trophic signs." (R. at 189.) Additionally, Plaintiff contends that page 192 "noted no movement in the ankle." (Pl.'s Obj. at 2.) However, the physical therapist's progress update to the physician, on page 192 of the record, more fully states as follows:

> When I ask her to actively move her ankle there is <u>no movement</u> yet she walks [with] no toe drag or foot drop. There is <u>no overt atrophy</u> in her lower leg. Secondary gain factors may be part of her lack of progress as she is critical about her being released back to work too soon and feels her surgery is to blame for her impairment. . . . Would an EMG study help us [rule out] some type of nerve damage and/or "managed effort"?

(R. at 192 (emphasis in original).) Additionally, it appears that the physician responded to the physical therapist's update, stating "From ortho standpoint [patient] can return to work." (R. at 192.)

The other pages cited by the magistrate judge reflect that, although Plaintiff had edema in her right ankle and hindfoot, and pain on palpation along the right ankle joint line and pain with motion, she had no macerations or erythema, and the protective threshold was intact bilaterally. (R. at 171.) An x-ray revealed that the hardware in Plaintiff's right ankle was intact and in place and that Plaintiff had no new fractures or dislocations. (R. at 171.) A later x-ray of Plaintiff's right ankle revealed that the hardware was still in place; the alignment at the ankle mortise was anatomic, although some degenerative changes were prominent in the ankle mortise; and no acute process was seen. (R. at 244.) A physician's note from the Rheumatology Clinic states that Plaintiff had full range of motion in her hips and knee, but pain with movement of her ankle. (R. at 233.) Finally, notes from the Orthopaedic Specialty Clinic again indicate that Plaintiff was uncooperative at her exam as "there is no evidence that the [patient] 'cannot move her foot,'" that Plaintiff's ankle was supple with good range of motion, and that the osteoarthritis in her

4

knee was mild. (R. at 276, 314.)

Based upon a review of the record, the Court finds Plaintiff's objection regarding the ALJ's assessment of Dr. Corbett's opinion to be lacking in merit. Inasmuch as the ALJ's assessment of Dr. Corbett's opinion is supported by substantial evidence in the record, Plaintiff's objection is overruled.

**B.      Plaintiff objects to the weight assigned by the ALJ to the opinions of the State Agency Physicians.**

Plaintiff next objects on the ground that she believes the ALJ improperly weighed the opinions of the State Agency physicians. (Pl.'s Obj. at 3-4.) This argument was presented by the Plaintiff to the magistrate judge in Plaintiff's Motion for Summary Judgment. Upon review of the R&R, the Court concludes that the magistrate judge properly considered this argument and appropriately concluded that the ALJ properly evaluated the opinions of the State Agency physicians. Plaintiff's contention that "the record consisted of only records from physical therapy" at the time these opinions were rendered is disingenuous. Indeed, the report of Dr. Wickham, the first of the two State Agency physicians to review Plaintiff's medical records, refers to other records, including treatment notes from Dr. Haney (Plaintiff's orthopedic surgeon), an x-ray of Plaintiff's knee, and an echocardiography report. (R. at 226.) Additionally, at the time the State Agency physicians reviewed Plaintiff's record, the record contained other relevant evidence, including a treatment note from Dr. Shah, additional x-rays of Plaintiff's ankle and chest, and treatment notes and other records from the files of Dr. Corbett (Plaintiff's treating physician). (R. at 171, 200-19, 238, 244, 245-49.) For the reasons set forth in the R&R, Plaintiff's objection is overruled.

**C.      Plaintiff objects to the ALJ's evaluation of Plaintiff's credibility.**

Plaintiff's final objection is to the ALJ's evaluation of Plaintiff's credibility.  The ALJ discounted Plaintiff's credibility for the following reasons: (1) there was no medical evidence in the record that demonstrated that Plaintiff had any current limitation in her ability to stand or walk such that work at a light capacity would be precluded; (2) Plaintiff failed to abide by the treatment recommendations of her physicians; (3) Plaintiff's doctors and physical therapist observed that Plaintiff was uncooperative during her appointments and they suspected that she was putting forth a managed effort; (4) the degenerative changes in her hands were only minimal, and the osteoarthrits in her right ankle and knee was mild; and (5) Plaintiff's daily activities undermined her assertion that she was totally debilitated.  (R. at 20-21.)  Plaintiff objects to several of the stated reasons offered by the ALJ in support of his credibility determination.

First, Plaintiff argues that the ALJ erred in finding that there was no medical evidence in the record that demonstrated that Plaintiff had limitations in standing and walking.  (Pl.'s Obj. at 5.)  Plaintiff specifically contends that "there was competent medical evidence from two treating physicians that [Plaintiff] had limitations in standing and walking." (Pl.'s Obj. at 5.)  However, as noted above and explained more fully in the R&R, the ALJ properly discounted the weight afforded to the opinions of those treating physicians.  Additionally, as noted by the magistrate judge in the R&R, the ALJ did not completely discredit Plaintiff's allegations of pain, but rather, he found that, although she had some pain, her pain was not totally debilitating such that she could not perform light work with some additional limitations.  (R. at 21.)  In other words, his conclusion was not that Plaintiff had no limitations in standing and walking whatsoever, but rather that she was not limited in her ability to perform the standing and walking requirements

6

for light work.

Plaintiff's second argument is that it was inappropriate for the ALJ to support his credibility finding with an observation that Plaintiff failed to abide by her doctors' recommendations to lose weight through diet and exercise. (Pl.'s Obj. at 5.) In support of this argument, Plaintiff quotes SSR 02-1p, which states "[a] treating source's statement that an individual 'should' lose weight or has 'been advised' to get more exercise is not prescribed treatment," and failure to comply with such advice does not mandate a denial of benefits. SSR 02-1p. In so arguing, Plaintiff takes this quote out of context. The quoted language from SSR 02-1p arises in the context of a discussion of when an ALJ may deny benefits under 20 C.F.R. §§ 404.1530 and 416.930 for the sole reason that a claimant has failed to follow prescribed treatment that could restore her ability to work. 20 C.F.R. § 404.1530 ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work."); 20 C.F.R. § 416.930 (same). Here, the ALJ did not deny Plaintiff benefits on the basis that she failed to follow prescribed treatment. Rather, his finding was based on the existence of jobs in significant numbers in the national economy that Plaintiff can perform, despite her impairments, and he considered her failure to follow recommended treatment only for the purpose of evaluating her credibility. Inasmuch as the ALJ was not utilizing Plaintiff's failure to follow her physicians' recommendations for weight loss as a basis for denying benefits under 20 C.F.R. §§ 404.1530 or 416.930, the language from SSR 02-1p, which forms the basis of Plaintiff's objection, is not relevant.

The regulations require the ALJ to consider a claimant's course of treatment along with other factors in making a credibility determination. See 20 C.F.R. §§ 404.1529(c)(3)(v);

7

416.929(c)(3)(v); SSR 96-7p (stating "the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."). SSR 02-1p does not prohibit an ALJ from considering a claimant's failure to follow her doctors' recommendations for weight loss in the context of a credibility determination. Moreover, Plaintiff's failure to follow her doctors' recommendations for diet and exercise was not the only medical recommendation Plaintiff failed to follow. As stated in the R&R, Plaintiff also failed to follow-up with her podiatrist for evaluation and necessary adjustments of her prescribed ankle brace, and Plaintiff used her prescribed respiratory medications only sporadically even though they appeared to be effective in controlling her respiratory impairments when they were used consistently. (R. at 20-21, 171-74, 193, 198, 260.)

Plaintiff next contends that the magistrate judge erred in noting that Plaintiff was considered by one of her doctors and her physical therapist to be a malingerer. According to Plaintiff, this was a post-hoc rationalization made by the Defendant for the first time in this Court and was not suggested by the ALJ. (Pl.'s Obj. at 5.) Plaintiff is correct that the Court may not consider an after-the-fact rationalization for the ALJ's decision. See SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) (In reviewing a determination that an administrative agency has the sole authorization to make, the reviewing court "must judge the propriety of such action solely by the grounds invoked by the agency."); Rickards v. Chater, No. 94-35913, 1996 U.S. App. Lexis 4684, at *4 (9th Cir. Feb. 29, 1996). However, the contention that Plaintiff was suspected of being a malingerer was not raised after-the-fact by the Defendant. The ALJ observed that Plaintiff's physical therapist had suggested that Plaintiff may be putting forth a "managed effort"

8

and then specifically noted in the course of substantiating his credibility determination that "it was noted that the claimant was not cooperative with the examination, that there was no evidence that she could not move her ankle, so no further appointments were scheduled." (R. at 15, 20-21.) Plaintiff's argument, accordingly, lacks merit.

Finally, Plaintiff argues that the ALJ erred in concluding that Plaintiff's daily activities suggest that her pain is not totally debilitating. (Pl.'s Obj. at 5-6.) Plaintiff had testified at the hearing before the ALJ that she requires assistance in the shower, does not prepare her own food, lays in bed all day, and leaves the house only once per week to shop. (R. at 39-40.) Other evidence in the record, however, suggested that Plaintiff could prepare her own food daily, iron her clothing, go grocery shopping once per week, go outside daily, visit with friends, go to church, and lift ten to twenty pounds. (R. at 130-137.) The ALJ resolved such evidence, stating that he believed Plaintiff's "complaints of pain are exaggerated and that, although she may have some pain, the pain is not totally debilitating because she shops, performs at least some household chores, visits, and drives." (R. at 21.) Plaintiff contends that such marginal daily activities as ironing clothing and going outside "are hardly consistent with an ability to perform work-related tasks in a competitive 40 hour workweek." (Pl.'s Obj. at 5.) Although Plaintiff's argument is couched as a challenge to the ALJ's credibility determination, the Court interprets this argument as a challenge to the ALJ's residual functional capacity ("RFC") determination.[1] Plaintiff's point is well taken. RFC is an administrative assessment of an individual's "ability to

---

[1] To the extent that Plaintiff's objection is actually to the ALJ's credibility determination, rather than to the RFC assessment, the Court again notes that the ALJ did not totally discredit Plaintiff's subjective complaints of pain. Rather, he found them partially credible, stating that "although she may have some pain," he believed her complaints were exaggerated and that she was "not totally debilitat[ed]." (R. at 21.)

9

do sustained work activities in an ordinary work setting on a regular and continuing basis." SSR 96-8p. A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. Id. The fact that Plaintiff shops, performs some household chores, visits, and drives, without more, is not substantial evidence that a claimant possesses the RFC to engage in sustained work activities in an ordinary work setting on a regular and continuing basis. See Baker v. Barnhart, 457 F.3d 882, 897 (8th Cir. 2006) ("the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.").

However, although a claimant's ability to participate in limited household chores, standing alone, does not prove that she has the ability to perform substantial gainful activity, the ALJ may consider these activities among other factors. Jarrells v. Barnhart, No. 7:04-cv-00411, 2005 WL 1000255, at *7-8 (W.D. Va. Apr. 26, 2005). Plaintiff's daily activities were not the sole evidence upon which the ALJ rested his RFC determination in this case. He also considered Plaintiff's subjective complaints, which he found partially credible; the objective medical evidence; the opinions of Plaintiff's treating physicians; and the opinions of the DDS physicians. (R. at 18-22.) RFC is to be assessed based on all of the relevant evidence in the record, including information about the individual's symptoms and any medical opinions submitted by acceptable medical sources about what an individual can still do despite her impairment(s). SSR 96-8p. Because the ALJ's RFC determination was based upon a consideration of all of the relevant evidence in the record and was consistent with the medical evidence and opinions of the medical experts, the Court finds that it was supported by substantial evidence in the record. Plaintiff's objection is, accordingly, overruled.

## CONCLUSION

Having considered de novo the portions of the R&R to which Plaintiff has objected, the Court finds that the magistrate judge's findings of fact and conclusions of law were without error. The objections to the R&R will be overruled; the R&R will be accepted and adopted; the Plaintiff's Motion for Summary Judgment and Motion to Remand will be denied; the Defendant's Motion for Summary Judgment will be granted; and the decision of the Commissioner will be affirmed.

An appropriate Order shall issue.

/s/
Richard L. Williams
Senior United States District Judge

Richmond, Virginia
Dated: Jan. 8, 2010